UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALASKA AIRLINES, INC., | CASE NO. C11-0616JLR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' AND INTERVENOR'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JUDY SCHURKE, et al., | |
| Defendants, | |
| and | |
| ASSOCIATION OF FLIGHT ATTENDANTS – COMMUNICATION WORKERS OF AMERICA, AFL-CIO | |
| Intervenor. | |

## I.   INTRODUCTION

Before the court are three cross motions for summary judgment filed by Plaintiff

Alaska Airlines ("Alaska") (2d Alaska SJ Mot. (Dkt. # 78)), Defendants Judy Schurke

1   and Elizabeth Smith (collectively "Defendants") (2d Def. SJ Mot. (Dkt. # 82)), and

2   Intervenor Association of Flight Attendants – Communication Workers of America,

3   AFL-CIO ("AFA") (AFA SJ Mot. (Dkt. # 87)).  This is a preemption case, arising out of

4   a dispute between Alaska and the Washington State Department of Labor and Industries

5   ("the Department").  (1st Am. Compl. (Dkt. # 49) ¶ 3.)  The Department investigated

6   complaints filed by Alaska flight attendants, who alleged that Alaska violated the

7   Washington Family Care Act ("WFCA"), RCW 49.12.265-290.  (1st Am. Compl. ¶ 28.)

8   Defendants Judy Schurke and Elizabeth Smith have been named in their official

9   capacities as the Department's Director and Employment Standards Program Manager,

10  respectively.  (*See generally*, *id.*).

11          Alaska does not dispute its obligation to comply with the WFCA and admits that

12  the statute confers "nonnegotiable" rights on employees.  (1st Alaska SJ Mot. (Dkt. # 4)

13  at 7; Resp. to 1st Def. SJ Mot. (Dkt. # 26) at 11.)  According to Alaska, however, flight

14  attendant complaints regarding compliance with the WFCA should be resolved through

15  the mandatory grievance procedures established in the collective bargaining agreement

16  between Alaska and AFA ("Alaska CBA").  (1st Am. Compl. ¶¶ 13, 14.)  In a previous

17  order, the court dismissed Alaska's first complaint (Compl. (Dkt. # 1)) on ripeness

18  grounds, holding that it could not conduct a case-by-case preemption analysis because no

19  actual employee's complaint was before the court.  (*See generally* 2/14/12 Order (Dkt.

20  # 47).)  Alaska then filed an amended complaint, this time challenging Department

21  enforcement of the WFCA both generally and with respect to a specific employee—

22  Laura Masserant—an Alaska flight attendant.  (1st Am. Compl. ¶ 3.)

1    In its present motion for summary judgment, Alaska seeks a declaratory judgment

2  that the Department's enforcement activities against it with respect to the WFCA are

3  preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, both generally

4  and with respect to Ms. Masserant.[1]  (2d Alaska SJ Mot. at 7.)  Alaska also seeks a

5  permanent injunction enjoining the Department from investigating or enforcing Ms.

6  Masserant's WFCA complaint or other complaints filed by Alaska's flight attendants.

7  (*Id.*)  In its motion, the Department asks the court to find that the RLA does not preempt

8  its enforcement of the WFCA with respect to Ms. Masserant's complaint as a matter of

9  law.  (2d Def. SJ Mot. at 2.)  Alternatively, even if the court finds that the RLA preempts

10  the Department's enforcement efforts with respect to Ms. Masserant, the Department asks

11  the court to grant partial summary judgment to the Department and allow it to continue

12  enforcing the WFCA on a case-by-case basis.  (*Id.* at 2-3.)  AFA, in its motion for

13  summary judgment, asks the court to dismiss Alaska's amended complaint with

14  prejudice.  (AFA SJ Mot. at 20.)

15    The court has considered the parties' submissions filed in support of and

16  opposition to the cross motions for summary judgment and the applicable law.  For the

17  reasons stated below, the court GRANTS Defendants' motion for summary judgment,

18

19    [1] Alaska alleges in its first amended complaint that the Department's enforcement of the WFCA both violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is preempted by the RLA.  (1st Am. Compl. at ¶¶ 29-40.)  However, the court has already explained that these causes of action are "grounded in the same theory, namely that the Department's enforcement of the WFCA conflicts with Congress' purpose in passing the RLA" and are therefore "subject to the same analysis."  (2/14/12 Order at 11 n.7.)  Alaska recognized the court's determination on this point in its motion.  (2d Alaska SJ Mot. at 9 n.4.)  The court therefore considers Alaska's Supremacy Clause argument as part of Alaska's RLA preemption argument.

ORDER- 3

GRANTS AFA's motion for summary judgment, and DENIES Alaska's motion for summary judgment. The court rules that the RLA does not preempt state enforcement of the WFCA because Ms. Masserant's state law claims are independent of the collective bargaining agreement between Alaska and AFA.

## II.  BACKGROUND

**A.  The Washington Family Care Act**

The WFCA provides that an employee who is entitled to paid time off under a collective bargaining agreement or other policy may use that paid time off to care for certain sick family members:

(1) If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for:

(a) A child of the employee with a health condition that requires treatment or supervision; or

(b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.

An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.

(2) Use of leave other than sick leave or other paid time off to care for a child, spouse, parent, parent-in-law, or grandparent under the circumstances described in this section shall be governed by the terms of the appropriate collective bargaining agreement or employer policy, as applicable.

RCW 49.12.270. The WFCA defines "sick leave or other paid time off" by reference to substantive leave guarantees in other sources, specifically: "time allowed under the terms

of an appropriate state law, collective bargaining agreement, or employer policy, as applicable, to an employee for illness, vacation, and personal holiday."  RCW 49.12.265(5).  The Department is charged with enforcing the WFCA:  it investigates complaints filed by employees and may issue notices of infraction if it reasonably believes the employer has failed to comply with these statutory requirements.  RCW 49.12.280; RCW 49.12.285.

**B.      Alaska's Collective Bargaining Agreement and Leave Policies**

Alaska is a federally regulated common carrier that employs over 3,000 flight attendants.  (3d Link Decl. (Dkt. # 81) Ex. K) ¶ 4.)  A collective bargaining agreement between Alaska and the AFA governs the flight attendants' employment.  (Skey Decl. (Dkt. # 6) ¶ 8.)  The parties entered into this CBA pursuant the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, which regulates collective bargaining agreements in the railroad and airline industries.  (*Id.*)  The RLA creates "a comprehensive framework for the resolution of labor disputes" arising out of the interpretation of CBAs in these industries.  *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987).  Pursuant to this statute, CBAs must establish an arbitration board chosen by the parties, called a Board of Adjustment, and disputes encompassed by the RLA must be resolved by this Board.  *Id.*  The Alaska CBA established a mandatory grievance procedure to provide employees with a venue for resolving these grievances, as required by the RLA.  (3d Link Decl. ¶¶ 3, 8.)

The Alaska CBA also contains provisions outlining the rules for flight attendant absences.  (*See generally id.*)  The Alaska CBA lays out how sick time and vacation time

1    are calculated, and also assigns disciplinary consequences for repeated absences.[2] (*Id.* ¶

2    5.)  Specifically, under Alaska's attendance control program, flight attendants are

3    assessed points for absences and are disciplined when they accrue too many points.  (1st

4    Link Decl. (Dkt. # 5) ¶ 11.)  According to Alaska, these disciplinary consequences do not

5    accrue when a flight attendant's absence falls under the terms of the WFCA.  (3d Link

6    Decl. ¶ 6.)  Alaska maintains it does not penalize a flight attendant who requests leave to

7    care for a family member if, on the date of the requested leave, the flight attendant is

8    "entitled to use" accrued vacation time to cover the absence.  (*Id.* ¶ 7.)  However, Alaska

9    does not permit flight attendants to use vacation time for WFCA leave on days when they

10   have not previously scheduled vacation time.  (2d Alaska SJ Mot. at 10.)

11          The Alaska CBA sets out how flight attendants earn sick leave and vacation time.

12   (3d Link Decl. ¶ 11.)  Alaska flight attendants accrue sick leave in terms of "trips for

13   pay" ("TFP") based on the distance of flights they complete during a calendar month.

14   (2d Alaska SJ Mot. at 13.)  The Alaska CBA also outlines the bidding process used to

15   determine flight attendant vacation time.  (3d Link Decl. ¶¶ 11-15.)  In October or

16   November, flight attendants bid for vacation time for the following calendar year, and

17   receive their vacation schedule based on seniority.  (*Id.* ¶ 11.)  Flight attendants earn

18   vacation time during the previous calendar year, bid for specific vacation days in the fall,

19

20          [2] At oral argument the parties acknowledged that the current dispute with respect to Ms.
21   Masserant's complaint is limited to the use of Ms. Masserant's vacation time for family leave.
     The court thus limits its analysis to whether Ms. Masserant had a right to use her banked
22   vacation time to cover her May 2011 absence and does not address the use of Ms. Masserant's
     sick leave to cover this absence.

1   and on January 1 receive their vacation schedule for the entire following calendar year.

2   (*Id.*)  From January 1 forward, flight attendants may "cash out" their vacation time and

3   receive all of their vacation pay upfront, but that means they will not receive any pay

4   during their scheduled vacation time later in the year.  (*Id.* ¶ 15.)

5          Other than cashing out, there are only limited circumstances under which Alaska

6   permits flight attendants to use scheduled vacation time for other purposes.  (*Id.* ¶ 12.)

7   Alaska's longstanding practice is to only permit flight attendants to use scheduled

8   vacation at a non-scheduled time in situations specifically outlined in the Alaska CBA.

9   (*Id.*)  The Alaska CBA specifically allows flight attendants to use vacation time for

10  contractually covered medical, maternity, or bereavement leave, or flight attendants may

11  trade vacations through a contractually negotiated process.  (*Id.* ¶ 13.)  Thus, although the

12  Alaska CBA does not specifically address whether flight attendants may use vacation

13  time for family leave, pursuant to its longstanding practice, Alaska does not permit flight

14  attendants to use scheduled vacation time for WFCA leave on unscheduled days.[3]  (*Id.*

15

16  _____

17        [3] Alaska concedes that the CBA does not expressly address whether flight attendants may
    use scheduled vacation time for family leave.  (2d Alaska SJ Mot. at 23.)  However, Alaska's
18  longstanding practice is to prohibit the use of vacation time for WFCA leave (*id*), and collective
    bargaining agreements include implied terms arising from "practice, usage, and custom."
    *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 264 n.10 (1994) (quoting *Consol. Rail Corp. v.*
19  *Ry. Labor Execs. Ass'n*, 491 U.S. 299, 311-12 (1989)); *see also Capraro v. United Parcel Serv.*,
    993 F.2d 328, 332 (3d Cir. 1993).  Indeed, at oral argument, the AFA agreed that for purposes of
20  summary judgment, Alaska's practice regarding vacation time was part of the Alaska CBA.  The
    Department, however, took a different position, arguing that Alaska's practice was not part of the
21  CBA.  Based on the case law cited in this footnote, for purposes of the present summary
    judgment motions, the court will proceed with the understanding that Alaska's longstanding
22  practice not to permit flight attendants to use scheduled vacation time for WFCA leave on
    unscheduled days is an implied term of the Alaska CBA.  Based on the analysis of this order,

1  ¶ 12.)  Flight attendants, including Ms. Masserant, filed complaints with the Department

2  alleging these leave practices violated the WFCA.  (2d Def. SJ Mot. at 4, 7.)

3  **C.**     **The Department's Actions Enforcing the WFCA**

4          During 2010, the Department began investigating complaints filed by several

5  flight attendants who alleged Alaska violated the WFCA.  (1st Am. Compl. ¶ 28.)  Alaska

6  filed its first complaint challenging the state's ability to engage in these enforcement

7  actions on April 11, 2011 (Compl.), but the court dismissed this complaint as not ripe.

8  (*See generally* 2/14/12 Order.)  Specifically, the court found that Alaska's complaint was

9  not prudentially ripe because courts must determine RLA preemption on a case-by-case

10  basis.  (*Id.* at 12 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).)

11  Alaska did not base its initial complaint on any particular flight attendant's WFCA

12  complaint.  (*Id.*)  Instead, Alaska sought a wholesale ruling that the Department's

13  enforcement of the WFCA was preempted in all instances, making this case-by-case

14  analysis impossible.  (*Id.*)  The court granted leave to amend, and Alaska filed an

15  amended complaint on March 14, 2012.  (1st Am. Compl.)

16          In its amended complaint, Alaska challenged the Department's enforcement of the

17  WFCA generally and with respect to a specific employee:  Laura Masserant.  (*Id.* ¶¶ 15-

18  25.)  Alaska argues that the RLA preempts Department enforcement of the WFCA and

19  that the proper forum for resolving Ms. Masserant's complaint is the Board of

20  Adjustment established by the Alaska CBA.  Ms. Masserant is a flight attendant with

21

22  whether or not Alaska's vacation practice is incorporated into the Alaska CBA ultimately
   provides unimportant.

Alaska.  (*Id.* ¶ 16.)  In May 2011, Ms. Masserant took time off work to care for her sick child, reporting absent for a two-day trip worth 12.2 TFP.  At that time, Ms. Masserant had seven days of vacation time and 10.6 TFP of sick leave in her leave bank.[4]  The seven vacation days in her leave bank were scheduled for December 3 through 9, 2011.  Pursuant to its longstanding practice, Alaska did not permit Ms. Masserant to use her vacation time scheduled for December for family leave in May.  Alaska did allow Ms. Masserant to credit her 10.6 TFP of banked sick leave toward her absence, leaving her 1.8 TFP short of covering two-day trip.  Later, in June 2011, Alaska allowed Ms. Masserant to cash out her December 2011, vacation time.

Believing Alaska's actions violated the WFCA, Ms. Masserant filed a complaint with the Department on June 16, 2011.  The Department investigated these claims, and issued a notice of infraction against Alaska in May 2012.  Specifically, the Department determined that Ms. Masserant had seven days of banked vacation time and was thus "entitled to sick leave or other paid time off" under the terms of the WFCA.  According to the Department, Alaska's refusal to allow Ms. Masserant to use her banked vacation time, scheduled for December, to cover her May family sick leave violated her rights

---

[4] Ms. Masserant had bid for her 2011 vacation time during the fall of 2010 and received her scheduled vacation time for all of 2011 on January 1, 2011.  On January 1, 2011, Ms. Masserant was scheduled for four days of vacation in January, seven days in February, seven days in April, seven days in November, and seven days from December 3 through 9, 2011.  Before May 2011, Ms. Masserant took her January vacation time and cashed out her time for February, April, and November.  Thus, as of May 2011, Ms. Masserant only had the seven vacation days in her leave bank and those seven days were scheduled for December 2011.

1   under the WFCA.  The Department based these conclusions on Ms. Masserant's leave

2   balance sheet, provided by Alaska, and maintains it did not rely on the Alaska CBA.

3   ### III.    ANALYSIS

4   **A.    The Legal Standard**

5   The parties filed cross motions for summary judgment pursuant to Federal Rule of

6   Civil Procedure 56.  (*See generally* 2d Alaska SJ Mot.; 2d Def. SJ Mot.; AFA SJ Mot.)

7   Courts must grant a motion for summary judgment when "the movant shows that there is

8   no genuine dispute as to any material fact and the movant is entitled to judgment as a

9   matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

10  322 (1986).  There is no genuine issue of material fact when the record, taken as a whole,

11  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

12  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

13  On a motion for summary judgment, the moving party bears the initial burden of

14  showing there is no genuine issue of material fact and that she is entitled to prevail as a

15  matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets her burden, then the

16  non-moving party "must make a showing sufficient to establish a genuine issue of

17  material fact regarding the existence of the essential elements of the case that he must

18  prove at trial" in order to withstand summary judgment.  *Galen v. Cnty of L.A.*, 477 F.3d

19  652, 658 (9th Cir. 2007).  The court must "view the facts and draw reasonable inferences

20  in the light must favorable to the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378

21  (2007).

22

**B.     RLA Preemption**

Under the Supremacy clause of the U.S. Constitution, art VI, cl. 2, "[a] state law is preempted when (1) Congress has expressly superseded state law, (2) Congress has regulated a field so extensively that a reasonable person would infer that Congress intended to supersede state law, and (3) [] there is a conflict between federal and state laws." *Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 748 (9th Cir. 1996) (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). Alaska does not allege that Congress expressly preempted the Department's enforcement of the WFCA. Moreover, the enactment of the RLA "was not a preemption of the field of regulating working conditions themselves." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 254 (1994) (quoting *Terminal R.R. Ass'n of S. Louis v. Trainmen*, 318 U.S. 1, 7 (1943)). Alaska's claims thus arise under the third category, so-called conflict preemption. The court must determine whether the WFCA "conflicts with or otherwise 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the [RLA]" such that it is preempted. *Livadas v. Brandshaw*, 512 U.S. 107, 120 (1994) (quoting *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local*, 468 U.S. 491, 501 (1984)).

Conflict preemption ultimately depends on congressional intent. *Norris*, 512 U.S. at 252 (citing *Lueck*, 471 U.S. at 208). Courts do not lightly infer preemption of employment standards within a state's traditional police powers, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987), and will only read a federal statute to preempt state law if this is "the clear and manifest purpose of Congress." *Norris*, 512 U.S. at 252

1  (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985)).

2  Congress's purpose in passing the RLA was "to promote stability in labor-management

3  relations by providing a comprehensive framework for resolving labor disputes." *Id.*

4  Labor law uniquely requires uniform dispute resolution and contract interpretation

5  because "the possibility that individual contract terms might have different meaning

6  under state and federal law would inevitably exert a disruptive influence upon the

7  negotiation and administration of collective agreements." *Lueck*, 471 U.S. at 210.

8         To promote stability and uniform law, "the RLA establishes a mandatory arbitral

9  mechanism for the prompt and orderly settlement of two classes of disputes"—major and

10  minor. *Norris*, 512 U.S. at 252 (internal citation and quotation omitted).  Major disputes

11  relate to "the formation of collective bargaining agreements or efforts to secure them."

12  *Norris*, 512 U.S. at 252 (citation omitted).  Minor disputes involve "controversies over

13  the meaning of an existing collective bargaining agreement in a particular fact situation."

14  *Id.* at 252-53 (citation omitted).  In *Norris*, the Court explained that if a plaintiff's state-

15  law claim is in fact a major or minor dispute it must be resolved through the mandatory

16  arbitral mechanism established by the RLA, and the plaintiff's claim is preempted.  *Id.*

17  However, there is no preemption when a plaintiff's claim is not a minor or major dispute

18  because "different considerations apply where the employee's claim is based on rights

19  arising out of a statute designed to provide minimum substantive guarantees to individual

20  workers."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (quoting

21  *Buell*, 480 U.S. at 564-65).  Alaska does not claim that this case involves a major dispute

22

1   and instead argues that Ms. Masserant's complaints are minor disputes that must be

2   resolved by the procedures established in the Alaska CBA.  (2d Alaska SJ Mot. at 21.)

3         To determine whether the RLA preempts state law, courts must look to the source

4   of the right asserted.  *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996).  The

5   RLA preempts claims that are "grounded in the CBA" and that involve "the interpretation

6   or application of existing labor agreements."  *Norris*, 512 U.S. at 256.  By contrast, the

7   RLA does not preempt a state-law cause of action "if it involves rights and obligations

8   that exist independent of the CBA."  *Id.* at 260.  There is no RLA preemption where a

9   statute "confers nonnegotiable state-law rights on employers or employees independent

10  of any right established by contract."  *Lueck*, 471 U.S. at 213.

11        Based on these principles, the Ninth Circuit Court of Appeals articulated a two-

12  part test to determine if the RLA preempts state law.  First, courts inquire "into whether

13  the asserted cause of action involves a right conferred upon an employee by virtue of

14  state law, not by a CBA."  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir.

15  2007).  Second, even if "the right exists independently of the CBA, [the court] must still

16  consider whether [the right] is nevertheless substantially dependent on analysis of a

17  collective-bargaining agreement."  *Id.*  Courts apply this preemption test on a case-by-

18  case basis, looking to the actual claims and facts at hand.  *See, e.g.*, *Lueck*, 471 U.S. at

19  220 ("The full scope of the pre-emptive effect of federal labor-contract law remains to be

20  fleshed out on a case-by-case basis."); *Adkins v. Mireles*, 526 F.3d 531, 541 (9th Cir.

21  2008) ("Preemption analysis should take place on a case by case basis.").  Alaska now

22  challenges the Department's enforcement of the WFCA with respect to a specific

ORDER- 13

1    employee, Ms. Masserant.  For this reason, the court finds that Alaska's claims are

2    prudentially ripe, and turns to whether the RLA preempts state enforcement of the WFCA

3    under the *Burnside* two-part test.

4          1.   Whether Ms. Masserant's Rights Derive from the Alaska CBA

5          The parties agree that the central issue in this case is whether Ms. Masserant had a

6    right to use the vacation time in her leave bank, scheduled for December 2011, to care for

7    her sick child in May 2011.[5]  (2d Alaska SJ Mot. at 22; 2d Def. SJ Mot. at 14; AFA SJ

8    Mot. at 14-15.)  The court must first determine whether this asserted right arises from

9    state law or from the Alaska CBA itself.  *Burnside*, 491 F.3d at 1059.  "If the right exists

10   solely as a result of the CBA, then the claim is preempted, and [the court's] analysis ends

11   there."  *Id.*  To determine whether a right arises from state law or a CBA, courts consider

12   "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining

13   agreement [and] not whether a grievance arising from 'precisely the same set of facts'

14   could be pursued" via the dispute resolution mechanism established by the CBA.  *Id.* at

15   1060 (quoting *Livadas*, 512 U.S. at 123 (citation omitted)) (emphasis in *Burnside*).

16

17   _____

18        [5] In its motion for summary judgment, Alaska argues that the Department could not
     investigate Ms. Masserant's complaints about the use of her vacation time or the use of her sick

19   leave to cover her two-day absence.  (2d Alaska SJ Mot. at 21-23.)  Alaska argues that any right
     Ms. Masserant may have to use her sick leave before it is credited to her leave bank derives from

20   the Alaska CBA, or is at least substantially dependent on interpreting the Alaska CBA.  (*Id.* at
     21-22.)  However, the Department only determined that Alaska violated the WFCA by

21   disallowing the use of her banked vacation time to cover her absence.  (2d Def. SJ Mot. at 13.)
     The court thus limits its analysis to whether Ms. Masserant had a right to use her banked

22   vacation time independent from the Alaska CBA and does not address the use of Ms.
     Masserant's sick leave not yet credited to her leave bank.

1          Alaska argues that this dispute arises from the CBA because, under the terms of

2   the CBA and Alaska's longstanding practice, Ms. Masserant was not "entitled to use" her

3   vacation time for WFCA leave on dates other than those scheduled.  (2d Alaska SJ Mot.

4   at 22.)  However, this argument fundamentally misunderstands the rights guaranteed by

5   the WFCA.  The WFCA does not guarantee a substantive right to family care leave.

6   Instead, it provides employees with the right to *use* any leave guaranteed by other sources

7   to care for sick family members:  "If, under the terms of a collective bargaining

8   agreement or employer policy applicable to an employee, the employee is entitled to sick

9   leave or other paid time off, then an employer shall allow an employee to use any or all

10  of the employee's choice of sick leave or other paid time off to care for [certain family

11  members]."  RCW 49.12.270.

12         As Alaska correctly points out, Ms. Masserant had no right arising from the

13  Alaska CBA to use her December 2011 vacation time to care for her sick child in May

14  2011.  However, Ms. Masserant may have had such a right arising from the WFCA itself.

15  The court need not determine whether Alaska's restrictions on the use of banked vacation

16  time violated the WFCA and does not reach the merits of that issue.  It is sufficient that a

17  court could determine that the WFCA independently guaranteed Ms. Masserant the right

18  to use her accrued leave, whatever the source, for family leave.  For these reasons, the

19  court finds that the right at issue—Ms. Masserant's asserted right to use her vacation time

20  for family leave under the WFCA—may arise from the WFCA but certainly does not

21  arise from the Alaska CBA.

22

1        2.   Whether Ms. Masserant's Rights Substantially Depend on the Alaska CBA

2        The court's conclusion that Ms. Masserant's asserted right does not arise from the

3   Alaska CBA does not end the RLA preemption analysis.  Applying the second part of the

4   *Burnside* test, the RLA preempts state law if the right at issue is "substantially dependent

5   on analysis of a collective-bargaining agreement."  491 F.3d at 1059.  "[T]o determine

6   whether a state right is 'substantially dependent' on the terms of a CBA, [the court must]

7   decide whether the claim can be resolved by 'looking to' versus interpreting the CBA."

8   *Id.* at 1060 (internal citation omitted).  The Ninth Circuit has "stressed that, in the context

9   of [RLA] preemption, the term 'interpret' is defined narrowly—it means something more

10  than 'consider,' 'refer to,' or 'apply.'"  *Balcorta v. Twentieth Century-Fox Film Corp.*,

11  208 F.3d 1102, 1108 (9th Cir. 2000).  Moreover, "[w]hen the meaning of contract terms

12  is not the subject of dispute, the bare fact that a collective-bargaining agreement will be

13  consulted in the course of state-law litigation plainly does not require the claim to be

14  extinguished."  *Lividas*, 512 U.S. at 124 (citing *Lingle*, 486 U.S. at 413 n.12; *see also*

15  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 992 (9th Cir. 2007) ("The parties do not

16  dispute the meaning of these provisions [of the CBA] . . . .  There is thus no need to

17  'interpret' these aspects of the CBAs in assessing whether there were wages 'due' at the

18  time of Soremekun's resignation.").

19        Alaska argues that Ms. Masserant's complaint with the Department requires

20  interpreting the CBA for two reasons.  First, Alaska argues that "in order to determine

21  whether Masserant was *entitled to* vacation time off at all, one must first refer to the

22  CBA" because "[t]he CBA sets forth in detail the bidding and scheduling process for

ORDER- 16

1   flight attendant vacations." (2d Alaska SJ Mot. at 22 (emphasis added).)  Second, Alaska

2   argues that "in order to determine whether Masserant was *entitled to use* her scheduled

3   December vacation time in May, one must interpret the CBA." (*Id.* at 22-23 (emphasis

4   added).)

5        First, the court rejects Alaska's argument that determining whether Ms. Masserant

6   was entitled to any vacation time in 2011 requires interpreting the Alaska CBA.

7   "Interpreting" a collective bargaining agreement requires more than just "referring to"

8   that agreement. *Balcorta*, 208 F.3d at 1108.  The WFCA requires referring to a CBA or

9   other employer policy in order to determine if an employee is "entitled to" sick leave or

10  other paid time off.  RCW 49.12.270.  In this case, however, the parties do not dispute

11  that Ms. Masserant was entitled to vacation time off at some point during 2011.  All of

12  Ms. Masserant's vacation days for 2011 were scheduled and credited to her leave bank on

13  January 1, 2011, she could cash out all of her vacation days at that time, and she had

14  seven days of vacation time in her leave bank in May 2011.  There is no dispute as to

15  "whether Masserant was entitled to vacation time off at all" (2d Alaska SJ Mot. at 22),

16  and "[w]hen the meaning of contract terms is not subject to dispute, the bare fact that a

17  collective bargaining agreement will be consulted in the course of state-law litigation

18  plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124; *see also*

19  *Firestone v. S. Cal. Gas Co.*, 281 F.3d 801, 802 (9th Cir. 2002) (holding that federal labor

20  law preempted state law because the plaintiffs' claim "cannot be decided by mere

21  reference to unambiguous terms of the agreement").  Thus, no interpretation of the

22

1    Alaska CBA is necessary to determine whether Ms. Masserant was entitled to vacation in

2    May 2011 under the WFCA.

3          Second, the court rejects Alaska's argument that "in order to determine whether

4    Masserant was entitled to use her scheduled December vacation time in May, one must

5    interpret the CBA."  (2d Alaska SJ Mot. at 22-23.)  The Alaska CBA, informed by

6    longstanding custom, prohibits the use of scheduled vacation time for WFCA leave.  (*Id.*

7    at 23.)  Alaska asserts that because the CBA did not allow Ms. Masserant to use her

8    vacation time for this type of family leave, interpretation of the CBA is necessary to

9    adjudicate Ms. Masserant's claim.  (*Id.*)  In other words, Alaska argues that the RLA

10   preempts state enforcement of the WFCA because the terms of the CBA govern the

11   manner in which Ms. Masserant may use her vacation time.  (*Id.*)  As explained below,

12   this argument misreads the WFCA because this statute does not limit an employee's use

13   of her paid time off to uses allowed under a CBA.

14         The Ninth Circuit in *Balcorta* rejected a similar preemption argument and

15   concluded that federal labor law did not preempt a state statute.  208 F.3d at 1111.  In that

16   case, plaintiff employee worked in the film industry as an electrical rigger.  *Id.* at 1104.

17   A collective bargaining agreement between defendant movie studio and the plaintiff's

18   union governed the conditions of his employment.  *Id.*  The plaintiff claimed the studio

19   violated a state statute requiring timely payment of wages after discharging employees.

20   *Id.* at 1104-05.  The studio argued that to resolve the plaintiff's state law claims the court

21   must interpret the CBA to determine whether the plaintiff was paid within the time

22   allowed by the CBA.  *Id.* at 1110.

ORDER- 18

1    The court in *Balcorta* acknowledged that "the collective bargaining agreement

2    contains a paragraph that sets forth time requirements governing the payment of wages

3    after discharge." *Id.*  However, the court concluded that it "need not decide whether the

4    collective bargaining agreement's provision governing the payment of wages is

5    ambiguous and requires interpretation" because the state statute—not the CBA—

6    "governs the timeliness of payment following discharge." *Id.* at 1110-11.  Whether the

7    studio violated the statute "is controlled only by the provisions of the state statute and

8    does not turn on whether payment was timely under the provisions of the collective

9    bargaining agreement." *Id.* at 1111.  In other words, federal law did not preempt state

10   law—despite apparently conflicting provisions in the CBA and the state statute regarding

11   timeliness of payment—because resolving the plaintiff's claims required only

12   interpreting the state statute, not the CBA.  *Id.* at 1111-12.

13    As explained previously, Alaska, like the defendant in *Balcorta*, misunderstands

14   the rights guaranteed by the state statute at issue.  The WFCA does not itself define

15   whether an employee is "entitled to" leave, but does establish when an employee may *use*

16   the leave to which she is entitled.  RCW 49.12.270.  Whether Alaska violated the WFCA

17   "is controlled only by the provisions of the state statute and does not turn on . . . the

18   provisions of the collective bargaining agreement." *Balcorta*, 208 F.3d at 1111.  In other

19   words, determining whether Alaska violated the WFCA requires only a "purely factual"

20   inquiry "about an employee's conduct or an employer's conduct" which does not "require

21   [the decisionmaker] to interpret any term of a collective-bargaining agreement." *Norris*,

22   512 U.S. at 261 (quoting *Lingle*, 486 U.S. at 407).  Indeed, here the decisionmaker will

ORDER- 19

1   determine whether Alaska's refusal to allow Ms. Masserant to use her accrued vacation

2   leave to care for her sick child violated the relevant portions of the WFCA discussed

3   above.  The WFCA creates a nonnegotiable state right, and parties cannot agree to a CBA

4   that contradicts those state rights.  *See Balcorta*, 208 F.3d at 1111 ("The rights granted to

5   employees by California labor Code § 201.5 are not subject to negotiation, and § 301 of

6   the LMRA does not grant private parties the power to waive nonnegotiable state rights.").

7           The fact that both state law and the CBA (implied provisions included) address

8   when an employee may use vacation leave does not mean the RLA preempts the WFCA.

9   The court concludes that the WFCA is independent of the Alaska CBA because "even if

10  [a decisionmaker] should conclude that the contract does not prohibit a particular

11  [employer action], that conclusion might or might not be consistent with a proper

12  interpretation of state law."  *Lingle*, 486 U.S. at 413.  In other words, by refusing to allow

13  Ms. Masserant to use her vacation time for WFCA family leave, Alaska's conduct may

14  be consistent with the CBA and yet still violate state law.  In cases like this, preemption

15  is inappropriate.  *See*, *e.g.*, *id.* (holding that the LMRA did not preempt a state retaliatory

16  discharge statute even though provisions of the CBA covered the same factual scenario

17  because a plaintiff could maintain separate and independent actions for violation of the

18  CBA and state law); *Balcorta*, 208 F.3d at 1111 (finding no preemption where an

19  employer could violate state law while still acting in accordance with a CBA).

20          Alaska directs the court to three cases (Alaska Resp. (Dkt. # 92) at 15), which it

21  asserts support preemption of enforcement by the Department of Ms. Masserant's

22  complaint under the WFCA:  *Firestone v. Southern California Gas Co.*, 281 F.3d 801

1   (9th Cir. 2002); *Blackwell v. Skywest Airlines, Inc.*, No. 06cv0307 DMS (AJB), 2008 WL

2   5103195 (S.D. Cal. Dec. 3, 2008); and *Fitz-Gerald v. SkyWest Airlines, Inc.*, 65 Cal.

3   Rptr. 3d 913 (Cal. Ct. App. 2007).  The court finds these cases distinguishable because

4   the courts in each of these cases determined that resolving the plaintiff's state law claims

5   required interpreting provisions of the applicable CBA, with different results required by

6   different CBA interpretations.  *Firestone*, 281 F.3d at 802 ("The agreement would be

7   enforced differently depending on which party's interpretation [of the CBA] is

8   accepted."); *Blackwell*, 2008 WL 5103195, at * 12 ("Given the many applicable pay

9   rates, categories, and differentials, any attempt to determine whether, when, and how

10  much compensation is owed to Blackwell necessarily requires an interpretation of the

11  CBA's provisions."); *Fitz-Gerald*, 65 Cal. Rptr. 3d at 918-20 (holding that interpretation

12  of the CBA was necessary to adjudicate plaintiff's state law claims).  Contrary to the

13  cases cited by Alaska and as explained above, resolving Ms. Masserant's complaint

14  requires interpreting only the WFCA and not the Alaska CBA.  Different interpretations

15  of the Alaska CBA will not lead to different results in Ms. Masserant's case.

16  Accordingly, preemption is inappropriate.[6]

17

18

19  [6] Alaska also analogizes to *Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001).
    (Alaska Resp. (Dkt. # 92) at 15.)  In that case, the court determined that the RLA preempted a

20  Puerto Rican vacation leave statute.  The parties disagreed about the amount of vacation leave
    the terms of the CBA entitled plaintiff flight attendant to take.  For this reason, the court
    concluded that "determining entitlement to vacation leave requires interpretation of the

21  Agreement rather than mere reference to it."  By contrast in this case, as explained above, the
    parties agree that the Alaska CBA entitled Ms. Masserant to seven days of vacation time as of
    May 2011, scheduled for the following December, and only disagree about whether Ms.

22  Masserant was entitled to use this vacation time for family sick leave in May 2011.  Thus, this

1

### IV.    CONCLUSION

2          Based on the foregoing, the court concludes that the RLA does not preempt

3   enforcement by the Department of the WFCA with respect to Ms. Masserant's claims.

4   Accordingly, the court GRANTS Defendants' motion for summary judgment (Dkt. # 82),

5   GRANTS AFA's motion for summary judgment (Dkt. # 87), and DENIES Alaska's

6   motion for summary judgment (Dkt. # 78).

7          Dated this 31st day of May, 2013.

8

9

10          _____

            JAMES L. ROBART
11          United States District Judge

12

13

14

15

16

17

18

19

20

21   _____

22   case, unlike *Adames*, does not require interpreting a CBA to determine whether an employee was
     entitled to vacation leave.

ORDER- 22